UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | ) | Case No. 19-CV-322 |
| | ) | Green Bay, Wisconsin |
| vs. | ) | |
| | ) | March 20, 2024 |
| EDWARD KUHN, | ) | 11:03 a.m. |
| Defendant. | ) | |

**TRANSCRIPT OF SHOW CAUSE HEARING**
BEFORE THE HONORABLE WILLIAM C. GRIESBACH
UNITED STATES SENIOR DISTRICT JUDGE

APPEARANCES:

For the Plaintiff
UNITED STATES OF AMERICA: United States Department of Justice
By: Elizabeth Kirby
Ben Franklin Station
PO Box 7238
Washington, DC 20044
Ph: 202-305-8656
elizabeth.a.kirby@usdoj.gov

For the Defendant
EDWARD KUHN: By: Edward Kuhn
PO Box 285
Stockbridge, WI 53088
Ph: 920-374-1258

U.S. Official Transcriber: SUSAN ARMBRUSTER, RPR, RMR
Transcript Orders: Susan_Armbruster@wied.uscourts.gov

Proceedings recorded by electronic recording,
transcript produced by computer aided transcription.

TRANSCRIPT OF PROCEEDINGS

Transcribed From Audio Recording

* * *

THE CLERK: Court calls Case No. 19-CV-322, United States of America v. Edward Kuhn, for a show cause hearing. May I have the appearances, please.

MS. KIRBY: Elizabeth Kirby on behalf of the United States.

THE COURT: Good morning.

DEFENDANT: Edward Kuhn.

THE COURT: Good morning. So Mr. Kuhn is appearing pursuant to the order to show cause. Ms. Kirby, what's the status of the case from the Government's standpoint?

MS. KIRBY: The status is the same from the Government's standpoint. Mr. Kuhn has still not paid any amount of employment tax to the Government. He has not shown he's signed up for electronic deposits. It's my understanding that he has recently filed some more late tax returns, which means that since Your Honor entered the order in 2019, he has now accumulated an additional $500,000 in employment tax debt. Thus, we are seeking to stop him from operating a business that maintains employees.

THE COURT: Mr. Kuhn.

DEFENDANT: I don't believe it's $500,000, but here's the timeline that I did since our telephone conference. All the

forms that were missing at the time on the list that Elizabeth presented here, I had mail her before that. The date of our hearing she hadn't received it. I also sent a check in there for fourth quarter of 2023. At that hearing, she had not received that yet. I called her once or twice after that in the next two days. I haven't heard back from that. She has talked to my accountant on several occasions. I know Jeff said he emailed her all the forms she was missing. All my '21 and '22 taxes finished by Jeff. I delivered those to Cassidy White's office. I -- He got them done last Thursday. I delivered them to her office Monday of this week.

When I was in there, I said that's everything, correct? That means everything should be current as I see it between the stuff I mailed in Jeff emailed in.

THE COURT: Jeff is who.

DEFENDANT: My accountant.

THE COURT: Jeff Schommer is your accountant?

DEFENDANT: Yes.

THE COURT: Spell his last name.

DEFENDANT: S-c-h-o-m-m-e-r.

THE COURT: Okay. And the other person? You mentioned Ms. Kirby. You mentioned -- Who else who are you talking about?

DEFENDANT: I dropped my forms off at the office in Green Bay here by Cassidy White.

THE COURT: Cassidy White is what?

DEFENDANT: An IRS employee. I was in her office on Monday of this week with what I thought were remaining forms that were still not filed.

THE COURT: Okay.

DEFENDANT: I then said that is everything, correct? And she came said no, I don't think so. She came out with a list with the 1040s from 2019 and '20, which was never on the list here to be re-filed. They were filed. Obviously, she doesn't have them one way or another I don't know why but we can get them. She's missing some 941s and 940s, which I assume were on the list and Jeff had emailed to Elizabeth.

THE COURT: To Ms. Kirby.

DEFENDANT: Okay.

THE COURT: We'll ask her later. I want to get your side.

DEFENDANT: Sure. So when I left that -- I called Jeff from the office with Cassidy White. I said here is my accountant. The information you need, can you get it to him? I had her on my phone. They talked to each other.

THE COURT: Your accountant talked with the IRS agent?

DEFENDANT: Correct. And then she said she would get ahold of him. She had to send him a power of attorney paperwork. And Jeff said this morning when I talked to him, he got -- He's going to do that today. I stopped at his office

today and signed the power of attorney so he can resubmit for a third time the 940, 41s and have to get the '19 and '20s in that we thought were in.

THE COURT: How many employees do you have, Mr. Kuhn.

DEFENDANT: Four.

THE COURT: What is your business again? You are a trucker.

DEFENDANT: Millwright.

THE COURT: A millwright.

DEFENDANT: We move equipment and take down equipment and put up equipment.

THE COURT: You have four employees?

DEFENDANT: Correct.

THE COURT: Are they full-time employees?

DEFENDANT: Yes.

THE COURT: Do you work in the business as well?

DEFENDANT: Yes.

THE COURT: And do you work as a team?

DEFENDANT: Yes.

THE COURT: All four of you together.

DEFENDANT: Yes.

THE COURT: And how much -- What's your gross income, for example, last year?

DEFENDANT: '22 was right around 800,000, the gross income.

THE COURT: And then, of course, you have lots of expenses. You have payroll. You have --

DEFENDANT: Correct.

THE COURT: You have machinery. So but the allegations, as I understand it, is you've not been paying employment and unemployment tax obligations. Employment I assume is the withholding and the social security or the Medicare.

MS. KIRBY: Yes, Your Honor.

THE COURT: And you agree you weren't paying those.

DEFENDANT: Yes, I agree. I am getting ready to file now so I can get it figured it out here.

THE COURT: How much do you owe?

DEFENDANT: I don't have the number in my head.

THE COURT: Ms. Kirby, What is your calculation? What is the Government's calculation?

MS. KIRBY: Your Honor, the undisputed evidence from the revenue office, the IRS agent, Ms. Cassidy White, she calculated it to be 435,000. That was for the periods 2019 through 2022. My understanding is that the new tax returns that we received from Mr. Kuhn over the past two months show an additional $75,000 pre-penalty and interest.

THE COURT: So he's still not paying withholding tax for his employees?

MS. KIRBY: That is correct, Your Honor.

THE COURT: And he's not paying the Medicare?

MS. KIRBY: Correct, Your Honor.

THE COURT: And Mr. Kuhn, if you're not doing that, what's your argument that I shouldn't enter an order closing down your business if you're not paying your employees' withholding taxes as every employer is required to do?

DEFENDANT: I started paying fourth quarter of last year. I sent a check in. Did you receive that with the forms?

THE COURT: Ms. Kirby, did you receive it? Did you -- Are you aware of taxes being paid last quarter?

MS. KIRBY: No, Your Honor. Since Monday of this week so two days ago, the Government has not received any funds for Mr. Kuhn.

THE COURT: And that's including the IRS agent that -- who is the agent working with Mr. Kuhn?

MS. KIRBY: Yes, Your Honor.

THE COURT: Yeah.

DEFENDANT: I did send it in, was fourth quarter. That was the week before our phone conference.

THE COURT: I don't know when that -- You mean the phone conference with the Court?

DEFENDANT: With you.

THE COURT: Was that a phone conference we had here or was this --

DEFENDANT: Yes, we did.

THE COURT: You appeared and you were by phone or were both of you by phone?

MS. KIRBY: We were both by phone, Your Honor. That was January 16th of this year.

THE COURT: That's what two months ago, and you haven't received anything?

MS. KIRBY: That is correct, Your Honor. Also, in your original order from 2019, all of these payments were required to be made current and electronically deposited through the Government's website.

THE COURT: Yeah, so there's no reason for checks is basically what you're saying.

DEFENDANT: Jeff did set that up or he was working on setting that up for me. I'm not sure he's done it yet or not. He asked me for information about it.

THE COURT: So at this point, Ms. Kirby, what are you asking for?

MS. KIRBY: Your Honor, the Government asks that Mr. Kuhn be prohibited from occupying a position that would put him in charge of collecting and accounting for and paying employment tax and from operating a business that employees, hires or maintains employees. He has had ample time and opportunity after opportunity to abide by federal law and this Court's numerous orders and has not made any change or put forth any effort to actually get any of these paid. It's taking way

not only from the Government from this Court but also his employees as tax payers.

THE COURT: Are you employers aware that you're not paying their tax and their Medicare?

DEFENDANT: They know that. They know I'm behind on it, yes.

THE COURT: Well, at this point, Mr. Kuhn, what argument can you make that you shouldn't be required to cease operating your business and being prohibited from occupying a position with a business where you would have responsibility for collecting truthfully accounting for, paying withholding or filing any taxes? I mean, what choice have you left us?

DEFENDANT: Can I move forward with somebody to take care of all my accounting for me and give all my accounting to a private firm working forward?

THE COURT: So in other words, all of the income that your business earns would be deposited in an account, and that would -- You would have no signature authority over that account. A third party would.

DEFENDANT: Distributed by someone else.

THE COURT: An accounting firm or some sort of firm, and they would be responsible for withholding, paying taxes and Medicare, unemployment taxes as well.

DEFENDANT: I didn't necessarily say an accounting, a person with a business degree or whatever. I didn't

specifically say accounting firm. If that is what you require, that's what we will do. That's fine.

THE COURT: Ms. Kirby, do you see any way around this?

MS. KIRBY: Your Honor, this is sort of what we attempted to do with your previous order.

THE COURT: The receiver.

MS. KIRBY: Yes, Your Honor. And as you know from the undisputed evidence, that did not really amount to that much as well. We got a lot of promises and not a lot of anything out of Mr. Kuhn.

THE COURT: Yeah.

MS. KIRBY: Truthfully at this point, Your Honor, there is nothing stopping from Mr. Kuhn from continuing to operate a business. He just has shown that he is not able to maintain employees. So the Government is just looking to stop the bleeding essentially.

DEFENDANT: Can I ask a question?

THE COURT: Sure.

DEFENDANT: The actual taxes are over 75,000, there's $350,000 in penalties is the way I understand it, Ms. Kirby?

THE COURT: Ms. Kirby, go ahead.

MS. KIRBY: No. $75,000 is the total tax for 2023. That's tax alone. I calculated them this morning actually just based on actual tax returns that were submitted. The 435,000 is the employment tax for 2019, 2020, 2021 and 2022. That does

include penalties and interest. Essentially, Mr. Kuhn is incurring around $18,000 every three months in employment tax give or take.

THE COURT: Anything else?

DEFENDANT: Can I have one month to get an accounting firm to do this all? If I don't, you can shut me down.

THE COURT: Ms. Kirby, do you want to wait a month?

MS. KIRBY: Your Honor, last time that I sat in this very seat, we were told it would be six months before we got a payment and we still do not have one. I do not have a lot of faith in waiting more time.

DEFENDANT: I meant to set up an accounting firm to do everything from this point forward.

THE COURT: If I enter this order, Mr. Kuhn, that would not prevent you. It seems to me Ms. Kirby, correct me if I'm wrong, from doing exactly that, taking yourself out of management position, turning over the -- You would cease operating the business in the sense that you would have somebody else in charge of operating the business. And by operating the business, that would mean, correct me if I'm wrong, somebody who would receive the income from the business, do withholding and payroll and paying appropriate bills. You could be an employee of the business, but you could not operate the business, and that would put you in the position where you could do just what you're talking about doing it seems to me. Ms. Kirby, what do

you think?

MS. KIRBY: Yes. I believe that's correct, Your Honor. In the alternative, again I'm definitely not a tax professional. He would need to speak with Mr. Schommer or another accountant, someone who knows that -- knows the laws there, but it's also possible that he can do a set up where he has subcontractors or something like that, for example, if they meet those requirements where he would pay them a 1099 and not withhold taxes from their pay.

THE COURT: But you'd have to be careful that they were not employees.

MS. KIRBY: That is exactly right.

THE COURT: Subcontractors; otherwise, you will see a fair labor standard suit as well.

DEFENDANT: I am aware how that works. I am a subcontractor by trade.

THE COURT: Mr. Kuhn, at this point, I think you've -- How long has this case been pending now? This is a 19-CV-322 case so it was started in 2019. We're 2024. It's about five years old. It's past time. Ms. Kirby has been patient probably more than she wanted to be. The Court has been patient.

It's time for me to enter this order, so I'm going to grant the Government's motion and direct that additional sanctions will be ordered. You're required to cease operating the business, and you're prohibited for a period of ten years

from occupying any position within a business for which you would have the responsibility for collecting, truthfully accounting for, paying withholding or filing any taxes pursuant to the internal revenue code. That includes but is not limited to employment taxes. I'll enter that order. You want to prepare an order for me to enter?

MS. KIRBY: Yes, Your Honor. I can get that to you today.

THE COURT: Okay. I'll enter that order. Mr. Kuhn, I would quickly move along the lines of trying to get somebody else to operate that business and you become an employee or simply, you know, pass on your business to someone else and become an employee for someone else. This is -- The amount of money that continues to be lost to the detriment not so much of the Government but your employees who are not -- You know, they are not having taxes withheld. You're really robbing from them in a sense because they are owed taxes on their income.

And, of course, the social security has implications for social security and Medicare, so this is -- This is past time, so I'll enter that order. Anything else that we should do today?

MS. KIRBY: Your Honor, kind of like a housekeeping but in light of your decision today, the Government also asks that the Government also moves for discharge of the receiver and termination of the receivership plus an order approving the

payment to that receiver as well. We can submit that order to you today as well.

THE COURT: That motion should be granted as well. Mr. Swanson's indicated he was unsuccessful. He was unable to accomplish the goal that was set for him, so we'll discharge him and order his compensation. All right.

DEFENDANT: Can we change that ten years to whenever it's paid in full?

THE COURT: If you pay it in full?

DEFENDANT: If everything is paid in full at the point where it is.

THE COURT: If you've paid in full, come back and ask me. And I think we would look favorably upon that if it's paid if full. Ms. Kirby, would the Government look favorably upon a motion to terminate the prohibition in the event that the back amount of taxes and withholding is paid in full?

MS. KIRBY: If the amount is paid in full and he can show that he can be complaint with reporting, yes, the Government would be pleased with that.

THE COURT: If he pays in full, that's a pretty good sign.

MS. KIRBY: Yes, Your Honor.

THE COURT: That's over 500,000 at this point.

MS. KIRBY: That is accurate yes, Your Honor.

DEFENDANT: My question would be this. If we can get

someone else to pay it, can we knock the penalties down?

THE COURT: That you'll have to discuss with IRS agent. If you reach agreement with the Government, that's between you. I don't have any control over -- You know, they are a different party. If you can work something out and talk to them, I don't -- How much of that 450,000 is penalty?

MS. KIRBY: I do not know off the top of my head, Your Honor.

THE COURT: A significant amount though I imagine.

MS. KIRBY: Less than half I would venture to say.

THE COURT: Still a significant amount.

DEFENDANT: Half is what I was thinking.

THE COURT: Okay. Very well. Then, this matter today is concluded. I'll look for your proposed order if you submit is to the proposed order mailbox.

DEFENDANT: Just for the record, this weeks payroll is the end of the month. It will be this quarter basically. If we stop today, it still fills out this quarter because of timeframe.

THE COURT: Any problem with that?

MS. KIRBY: That's understood. Thank you, Your Honor.

THE COURT: Thank you.

(Whereupon proceeding was concluded.)

C E R T I F I C A T E

I, SUSAN ARMBRUSTER, RMR, FCRR, Official Court Reporter and Transcriptionist for the United States District Court for the Eastern District of Wisconsin, do hereby certify that the foregoing pages are a true and accurate transcription of the audio file provided in the aforementioned matter to the best of my skill and ability.

Signed and Certified October 18, 2024.

/s/Susan Armbruster

Susan Armbruster

Susan Armbruster, RPR, RMR, FCRR
United States Official Reporter
517 E Wisconsin Ave., Rm 200A,
Milwaukee, WI 53202
Susan_Armbruster@wied.uscourts.gov